IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VIATECH TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION <br><br> Defendant. | Civil Action No. 17-570-RGA |

MEMORANDUM ORDER

Presently before the Court is Defendant's "Motion to Dismiss with Prejudice on the Basis of Claim Preclusion" (D.I. 12) and related briefing (D.I. 13, 16, 19). For the reasons that follow, **IT IS HEREBY ORDERED THAT** Defendant's Motion to Dismiss with Prejudice on the Basis of Claim Preclusion (D.I. 12) is **GRANTED**, as to accused Windows products, and is otherwise **DENIED**.

I. **Legal Standards**

A. **Motion to Dismiss**

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**B. Claim Preclusion**

Claim preclusion requires: (1) a final judgment on the merits in a prior suit, (2) where both suits involve the same parties or their privities, and (3) both suits are based on the same cause of action. *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999).

In patent infringement cases, "a cause of action is defined by the transactional facts from which it arises, and the extent of the factual overlap." *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1348 (Fed. Cir. 2014). The relevant transactional facts are (1) whether both suits involve the same patent, and (2) whether both suits involve accused products that are the same or

2

"essentially the same." *Id.* at 1349-50.[1] As to the first fact, claim preclusion applies even when the plaintiff chooses different patent claims in the second lawsuit.[2] *See Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045, 1053 (Fed. Cir. 2014) (applying, on summary judgment, claim preclusion to method claims dismissed without prejudice in first suit). As to the second fact, two products are "essentially the same" "where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008). Thus, claim preclusion bars accusing infringing acts "that are accused in [a] first action or could have been made subject to that action." *Brain Life*, 746 F.3d at 1054 (citing *Aspex Eyewear Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1343 (Fed. Cir. 2012)).

Claim preclusion is an affirmative defense. It is not generally a basis for dismissal on a Rule 12(b)(6) motion unless "apparent on the face of the complaint." *Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 280 (3d Cir. 2016). "If not apparent, the district court must either deny the [motion] or convert it to a motion for summary judgment . . . ." *Id.*

## II. First and Second Requirements of Claim Preclusion

Plaintiff filed suit against Defendant on September 24, 2014, alleging infringement of U.S. Patent No. 6,920,567 ("the '567 Patent") ("First Action"). (No. 14-cv-1226, D.I. 1). Plaintiff pled that Defendant had infringed "at least" apparatus claims 1, 2, 3, 4, 5, 6, 7, 13, 14, and 15 and method claims 28-32 of the '567 patent. (*Id.* at ¶¶ 38, 41). Plaintiff's infringement

---

[1] Defendant recently filed a supplemental brief (D.I. 24) arguing that the Federal Circuit has misapplied claim preclusion law in focusing on "products" rather than the "patented invention." Defendant acknowledges, however, that I must follow existing Federal Circuit law. (*Id.* at 1). Thus, that is what I do.

[2] Defendant characterizes *Brain Life* as providing, "The doctrine of claim splitting (a flavor of claim preclusion) bars allegations of infringement based on the '567 Patent regardless of the claims selected." (D.I. 13 at 9). Plaintiff does not dispute Defendant's characterization of the law. (*See generally* D.I. 16).

3

theory in the First Action was based on a "Software Protection Platform" (SPP) allegedly included in Defendant's Windows product. (First Action, D.I. 329 at 7). On February 10, 2017, Defendant moved for summary judgment of non-infringement. (First Action, D.I. 218). On June 12, 2017, the Court granted Defendant's motion and entered final judgment. (First Action, D.I. 330, 331).

On May 25, 2017, before the Court entered final judgment in the First Action, Plaintiff filed a new suit against Defendant, again alleging infringement of the '567 Patent ("Second Action").[3] (D.I. 1). On October 1, 2017, Plaintiff filed an Amended Complaint. (D.I. 11). Plaintiff pled that Defendant infringes "at least" apparatus claims 8-11 and method claims 26-27 of the '567 patent. (*Id.* at ¶¶ 27, 28, 29, 34, 40, 41, 42, 45). Claims 8-11 depend from claim 1. (*Id.*). Plaintiff's infringement theory in the Second Action is based on Defendant's "PlayReady DRM software," which the Amended Complaint indicates is included in both Windows and other products. (D.I. 11, ¶ 10). Defendant's "PlayReady DRM software protects distributed digital content downloaded to end user devices and systems, for examples, Windows . . . ." (D.I. 11, ¶ 22).

Defendant argues, and Plaintiff does not dispute, that the first two requirements of claim preclusion are met. (D.I. 13 at 8-9; D.I. 16). The First Action terminated with a final judgment on the merits, and both the First Action and the Second Action involve the same parties.

## III. Third Requirement of Claim Preclusion

Two patent infringement suits are based on the same "cause of action" when both suits involve the same patent, and involve accused products that are the same or "essentially the same." *Senju*, 747 F.3d at 1349.

---

[3] All citations to the docket are to the docket in the Second Action, unless otherwise noted.

Defendant alleges, and Plaintiff does not dispute, that both the First Action and the Second Action involve the '567 patent. (D.I. 13 at 9-10; *see generally* D.I. 16).

Defendant's Motion addresses two distinct groups of accused products: Windows products and non-Windows products. I will address them in turn.

### A. Windows Products

Defendant argues that the accused product in the First Action and the accused products in the Second Action are the same. (D.I. 13 at 10-12).

In the First Action, Plaintiff accused Windows of infringing the '567 patent. Plaintiff now asserts that its infringement claim did not accuse Windows as a whole, but only SPP "in combination with" Windows. (D.I. 16 at 2, 5). However, as I found in my order granting summary judgment in the First Action, "The accused products include[d] several versions of Windows and Office software." (First Action, D.I. 329 at 2). Plaintiff identified Windows as an accused product in its Complaint and in various briefs over the course of the First Action and its appeal. (First Action, D.I. 1, ¶ 37; First Action, D.I. 268 at 4; First Action, D.I. 246 at 1; *ViaTech Techs. Inc. v. Microsoft Corp.*, No. 17-2276 (Fed. Cir.), D.I. 18, Opening Brief at 6 ("In its complaint and contentions in the district court, ViaTech alleged that Microsoft's Windows and Office software infringes [the asserted] claims . . . of the '567 patent")).

Similarly, argues Defendant, Plaintiff accuses Windows of infringing the '567 patent in the Second Action. (D.I. 19 at 3). Defendant acknowledges that Plaintiff's Amended Complaint "make[s] minimal references to Windows." (D.I. 19 at 5). Nonetheless, Defendant argues, the Amended Complaint states that "PlayReady DRM Software" is incorporated into Windows, and accuses Windows itself of infringement. In the Amended Complaint, Plaintiff states, "[Defendant] has also committed infringing acts within the State of Delaware . . . . As an

example, [Defendant] offers to sell and sells . . . (DRM) software [, and] PlayReady DRM software is native to various Microsoft software applications and devices, including Microsoft Windows operating system software ('Windows') . . . ." (D.I. 11, ¶ 10). The Amended Complaint further reads, "Microsoft Windows . . . and digital content incorporating PlayReady DRM software for use with Microsoft Windows . . . are offered for sale . . . in this Judicial District, and infringe the patent asserted in this action." (*Id.*).[4]

Plaintiff, on the other hand, asserts that it accuses the "PlayReady [DRM] Product Suite and its related PlayReady client and server software," rather than Windows. (D.I. 16 at 8, 10-12). If so, it makes the accusation about as obscurely as possible. The Amended Complaint makes only a single reference to a "PlayReady product suite," and that is not in the text of the Amended Complaint. Instead, the Amended Complaint cites "Exhibit C" for the proposition that "PlayReady DRM software protects distributed digital content downloaded to end user devices and systems, for example, Windows . . . ." (D.I. 11 at 8 (citing D.I. 11-3, Exh. C at 3-4)). The cited exhibit describes the "PlayReady Product Suite." (D.I. 11-3, Exh. C at 3-4). Nonetheless, Plaintiff asserts that the Amended Complaint details "structural[] differen[ces]" between "the Windows operating system software" and the PlayReady Product Suite. (D.I. 16 at 12 (citing D.I. 11, ¶¶ 22-29, 30-53)). More specifically, Plaintiff argues, "Windows software does not include" several items necessary for direct infringement. (D.I. 16 at 8-9). For example, Plaintiff argues that "PlayReady protected digital media content files" are required for direct infringement, and Windows does not include "PlayReady protected digital media content files." (D.I. 16 at 9, 12 (citing D.I. 11-3, Exh. C at 4-5)). Defendant agrees that Plaintiff's direct

---

[4] The operative pleading for understanding what is accused is the Amended Complaint. The original Complaint's allegations have been superseded and are therefore irrelevant to that issue.

6

infringement claim includes not only Windows or another platform, but also "media." (D.I. 19 at 7). Similarly, Plaintiff argues that "PlayReady created client applications that acquire, decrypt, and play back PlayReady protected digital media content files" are required for infringement, and are not included in Windows. (D.I. 16 at 9). In sum, Plaintiff argues that the accused products in the Second Action are not "essentially the same" as Windows, the accused product in the First Action. (*Id.* at 10).

Plaintiff accused Windows alone of directly infringing the '567 patent in the First Action. (First Action, D.I. 329 at 2). Now, reading the Amended Complaint in the manner most favorable to Plaintiff, Plaintiff's direct infringement claim in the Second Action includes not only Windows, but other items, such as media, as well. Plaintiff has not alleged that adding media changes Windows, nor alleged that Windows has changed since the First Action. Given that Plaintiff previously asserted that Windows infringed the '567 patent, Plaintiff cannot once again accuse Windows of infringing the '567 patent, but argue that other items, like media, are necessary for infringement. Likewise, Plaintiff cannot repeatedly assert its patent against different parts of Windows in separate suits, even if one accused part is on the left-hand side of Windows and the other is on the right-hand side, so to speak.[5] The accused product in the Second Action is the same or "essentially the same" as Windows, the accused product in the First Action. Therefore, the cause of action in the Second Action is same as the cause of action

---

[5] Even though PlayReady DRM was not part of Plaintiff's infringement theory in the First Action, claim preclusion applies to claims and infringement theories that "could have been raised." *Brain Life*, 746 F.3d at 1054; *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) ("[F]or purposes of claim preclusion analysis, the term 'claim' is defined 'broadly in transactional terms, regardless of the number of substantive theories advanced in the multiple suits by the plaintiff.'"). Plaintiff chose to limit its infringement argument in the First Action to Windows's SPP feature. Plaintiff could have also accused Windows's PlayReady DRM feature. Accordingly, Plaintiff's argument that Defendant "refused to provide discovery on any other features of the Windows software" is irrelevant. (D.I. 16 at 5). Defendants are not generally required to provide discovery on non-accused features.

in the First Action, as to direct infringement.

Plaintiff also accuses Defendant of inducing and contributing to infringement by selling Windows. (D.I. 11, ¶¶ 28, 29). Likewise, in the First Action, Plaintiff accused Defendant of indirect infringement, including induced and contributory infringement, based on its sales of Windows. (First Action, D.I. 1, ¶¶ 45, 47). Plaintiff thus accused the same product of inducing infringement in both the First Action and the Second Action. As a result, Plaintiff brought the same cause of action in both the First Action and the Second Action, as to indirect infringement.

I hold that claim preclusion applies, as to accused Windows products, because those products necessarily existed before final judgment in the First Action.[6] Plaintiff filed the original Complaint in the Second Action before final judgment in the First Action. Therefore, as Defendant argues, Plaintiff "could have brought" its Second Action claims in the First Action. (D.I. 13 at 16). Plaintiff makes two arguments in response. First, Plaintiff argues that whether Plaintiff "could have accused PlayReady in the first lawsuit is irrelevant, because claim preclusion 'does not bar all unasserted claims that theoretically could have been raised, but only those based on the same cause of action that was actually asserted previously.'" (D.I. 16 at 19). Plaintiff's argument is circular. The parties' arguments in their briefs are directed to whether the causes of action in the First Action and the Second Action are the same, yet Plaintiff's argument presupposes that the Second Action is based on a different cause of action from the First Action. Second, Plaintiff argues that the original Complaint and Amended Complaint accuse certain "acts taking place after final judgment," which are not barred by claim preclusion. (D.I. 16 at

---

[6] Defendant argues, "[T]he products at issue existed before the filing of the" First Action. (D.I. 13 at 17). I think that statement makes sense for any products actually named in the First Action. For products not named in the First Action, but named in the Amended Complaint, it is not apparent from the face of the Amended Complaint when such products first existed.

19). However, as Defendant notes, Plaintiff's original Complaint was filed prior to the Judgment in the First Action, and therefore applies to prejudgment activity. (D.I. 19 at 10); *see* Fed. R. Civ. P. 15(c)(1)(B). Were Plaintiff to accuse activity taking place after the First Action's final judgment, I would need to assess whether the *Kessler* doctrine applies. However, Plaintiff has not done so, and the parties have not briefed that issue.[7]

Thus, it is apparent from the face of the Amended Complaint in this case that claim preclusion bars the assertion of the '567 Patent against Windows in this case. The claims against Windows will be dismissed with prejudice.

### B. Non-Windows Products

Defendant argues that all products including PlayReady DRM are "essentially the same" as Windows, the accused product in the First Action. (D.I. 13 at 14-16; D.I. 19 at 8-10). Defendant notes that "where the differences between" two accused products "are merely colorable or unrelated to the limitations in the claim of the patent," the two products are "essentially the same." (D.I. 19 at 9 (citing *Acumed*, 525 F.3d at 1324)). Accordingly, Defendant notes that the "relevant question is not whether the products are identical in every way, but whether the differences between them are related materially to the claim limitations of the patent." (D.I. 19 at 9).

Plaintiff argues that the non-Windows products it accuses of infringement, including Microsoft Xbox gaming consoles, are not "essentially the same" as Windows. (D.I. 16 at 15-16).

---

[7] Claim preclusion applies to both claims that existed before the filing of the First Complaint and claims that accrued after the filing of the First Complaint, but before the judgment. However, "claim preclusion d[oes] not bar allegations of infringement occurring after the prior final judgment because the patentee *could not* have brought those claims in the prior case." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1299 (Fed. Cir. 2017). The *Kessler* doctrine, which is "separate and distinct" from claim and issue preclusion, "fills the gap between" claim preclusion and issue preclusion, "allowing an adjudged non-infringer to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action." *Brain Life*, 746 F.3d at 1056 (emphasis omitted).

Plaintiff argues that, among other differences, "application programming interfaces" for the accused products differ by platform. (*Id.*). As a result, argues Plaintiff, Defendant has not established that the old accused products and new accused products are "essentially the same." (*Id.* (citing *See, e.g., SKC Kolon PI, Inc. v. Kaneka Corp.*, 2017 WL 3476995, at *3-5 (C.D. Cal. Mar. 13, 2017); *SRI Int'l, Inc. v. Symantec Corp.*, 852 F. Supp. 2d 529 (D. Del. 2012)).

Defendant responds by noting that Plaintiff's infringement allegations do not vary according to "application programming interfaces" used by a given accused product. (D.I. 19 at 9). Defendant notes that Plaintiff's Amended Complaint does not mention "application programming interfaces" or "APIs," and argues that the infringement claim charts in the Amended Complaint make no meaningful distinctions between the accused platforms that use PlayReady DRM software. (*Id.* (citing D.I. 11, ¶¶ 49-50)). As a result, argues Defendant, any differences between the products are "unrelated to the limitations in the claims of the patent." (D.I. 19 at 9 (citing *Acumed*, 525 F.3d at 1324)). Defendant therefore argues that all accused products in the Second Action are "essentially the same" as the accused product in the First Action, Windows. (*Id.*).

Defendant bears the burden of establishing that each of the non-Windows accused products is the same or essentially the same as Windows. Defendant is correct that the Amended Complaint's infringement claim charts make few differentiations between the various accused products. (D.I. 19 at 9). Rather, the charts primarily refer to properties and components of "Microsoft PlayReady DRM Software." (D.I. 11, ¶¶ 49-50). However, as Plaintiff notes, "there has been no discovery at all, and there is no evidence in the record, relating to . . . the similarities or differences between [Windows] software and the accused products in this case." (D.I. 16 at 15). Defendant's argument that the Amended Complaint does not mention "APIs" is not enough

for Defendant to meet its burden. (D.I. 19 at 9).

It is not apparent to me from the face of the Amended Complaint that the relevant portions of Xbox gaming consoles, for example, are essentially the same as their counterparts in Windows. Defendant has thus not met its burden of establishing that each of the non-Windows accused products is the same or essentially the same as Windows. Therefore, Defendant has not shown that Plaintiff brought the same cause of action in the First Action and Second Action. I will deny Defendant's Motion to Dismiss with Prejudice on the Basis of Claim Preclusion, as to all non-Windows products. I do this without prejudice to any later motion that Defendant might file on a full record.

Entered this 28 day of August, 2018.

*Richard G. Andrews*
United States District Judge