IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VIATECH TECHNOLOGIES, INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>MICROSOFT CORPORATION,<br><br>            Defendant. | Civil Action No. 17-570-RGA |

MEMORANDUM OPINION

John G. Day, Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE; Henry C. Bunsow, Denise M. De Mory, Michael N. Zachary, Jennifer L. Gilbert, Richard C. Lin (argued), BUNSOW DE MORY LLP, Redwood City, CA, Attorneys for Plaintiff.

Martina Tyreus Hufnal (argued), FISH & RICHARDSON P.C., Wilmington, DE; Frank F. Scherkenbach, Steven R. Katz (argued), Whitney Reichel, James Sebel (argued), FISH & RICHARDSON P.C., Boston, MA, Attorneys for Defendant.

May 22, 2020

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before the Court is the issue of claim construction of various terms in U.S. Patent No. 6,920,567 ("the '567 patent"). I have considered the Parties' Joint Claim Construction Brief. (D.I. 106). I heard helpful oral argument via Skype on May 18, 2020. (D.I. 111).

### I.    BACKGROUND

The '567 patent discloses systems and methods for distributing digital content files and controlling the use of digital content that is included in those files. Claim 1 recites a "digital content file" that comprises, among other things, "digital content," an embedded "file access control mechanism" and an associated "dynamic license database." (D.I. 107, Ex. 1 ('567 patent) at 3:56-4:1). The "file access control mechanism" controls access to the "digital content" based on licensing information stored in the "dynamic license database." (*Id.* at 4:1-11).

### II.    LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction

analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per*

3

*Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation and internal quotation marks omitted).

### III.   CONSTRUCTION OF AGREED-UPON TERMS

The parties agree that the Court's constructions in *ViaTech Tech., Inc. v. Microsoft Corp.*, No. 1:14-cv-01226-RGA (D. Del.), as modified by the Federal Circuit in *ViaTech Tech., Inc. v. Microsoft Corp.*, 733 F. App'x 542 (Fed. Cir. 2018), should apply to this case. I will adopt them.

### IV.   CONSTRUCTION OF DISPUTED TERMS

1. "functions" (Claims 1, 28)

    a. *Plaintiff's proposed construction*: No construction necessary. If any construction is required, the terms in which the word "functions appears should be construed as follows:
        i. "license functions" means "parameters, terms, procedures, methods, roles or ways for controlling access to protected content"
        ii. "user accessible functions of the license functions mechanism" means "license functions visible or otherwise available to the user via the graphical user interface"
    
    If the Court determines to construe the word "functions" in isolation, the word should be construed in a way that is consistent with the terms of which it is a part, and therefore would include: "parameters, terms, procedures, methods, roles or ways"

    b. *Defendants' proposed construction*: Plain and ordinary meaning: "actions"

    c. *Court's construction*: Plain and ordinary meaning. The plain and ordinary meaning does not include "parameters" or "terms" or other similar concepts. The parties and their experts are prohibited from suggesting expressly or implicitly that "parameters" or "terms" or similar concepts are included within the meaning of function.

The parties seem to disagree about this term principally because Plaintiff seeks to include "parameters" and "terms" in the construction. Plaintiff's argument for the inclusion of these extra nouns has no basis in either common understanding or lexicography, and it is therefore rejected. Function has a meaning in computer science, and the patentee seems to use the word

4

consistent with that understanding. "Function" better captures the patentee's meaning than the various alternatives suggested by the parties such as "actions," "procedures," "methods," and "roles." These other nouns are all inferior ways of describing a function and are therefore rejected. A separate construction for "license functions" and "user accessible functions" is not necessary. A person of ordinary skill in the art would understand what "functions" means in conjunction with "license" and "user accessible."

2. "the system fingerprint information" (Claim 12)

    a. *Plaintiff's proposed construction:* Not indefinite (i.e., one of ordinary skill in the art would understand as "system fingerprint information")

    b. *Defendant's proposed construction*: Indefinite

    c. *Court's construction*: Not indefinite

A claim is indefinite when the claim, "read in light of the specification delineating the patent, and the prosecution history, fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2016). The lack of an antecedent basis does not necessarily render a claim indefinite if the specification provides sufficient guidance as to the scope of the term. *See Energizer Holdings, Inc. v. ITC*, 435 F.3d 1366, 1370 (Fed. Cir. 2006). Microsoft bears the burden of proving indefiniteness by clear and convincing evidence. *See BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017).

"The system fingerprint information" in claim 12 lacks antecedent basis. But I believe it has a reasonably certain scope and meaning. The plain language of the claim refers to this system fingerprint information as being "in the dynamic license database" and serving the purpose of "identifying authorized media players." A person of ordinary skill in the art would understand that the term is not referring back to something previously mentioned because there is nothing to

5

which to refer back. It is furthermore clear to what this term is referring because it serves the purpose of identifying authorized media players. Here, the specification discusses what a "system fingerprint" is and how it is created and used to control access to digital content. ('567 patent at 22:45-46, 24:41-25:28). One of ordinary skill in the art would thus understand the scope of "the system fingerprint information" with reasonable certainty. Microsoft has failed to meet its burden of proving indefiniteness by clear and convincing evidence. *See BASF Corp.*, 875 F.3d at 1365.

    3. "wherein the digital content file wherein the digital content includes data contained in an encrypted digital content file" (Claim 26)

        a. *Plaintiff's proposed construction:* Not indefinite (i.e., one of ordinary skill in the art would understand as "wherein the digital content includes data contained in an encrypted digital content file")

        b. *Defendant's proposed construction*: Indefinite

        c. *Court's construction*: Indefinite

Here, one of the two "wherein" clauses is erroneous. The Federal Circuit has held that a "district court can correct an error only if the error is evident from the face of the patent [and if] 'the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims.'" *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1303 (Fed. Cir. 2005) (citation omitted). Where multiple possible corrections exist, even a small change is improper. *See Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357-58 (Fed. Cir. 2003).

There are two reasonable ways of interpreting the claim. One possible correction would be to delete "wherein the digital content file," so that the claim reads "wherein the digital content includes data contained in an encrypted digital content file." But another reasonable correction would be instead to delete "wherein the digital content," so that the claim reads "wherein the

digital content file includes data contained in an encrypted digital content file." One of ordinary skill in the art would have no way to determine with reasonable certainty which of these two fixes is the correct one, and each fix provides a claim with a different scope. According to Defendant, "Under ViaTech's proposed fix, the claim merely requires the creation of an encrypted digital content file. Under an equally reasonable proposed fix, the claim would require a digital content file, such as an installable execution file, that contains an encrypted digital content file." (D.I. 106 at 34). Plaintiff did not respond to this argument in the brief. (*Id*. at 34-36).[1] I might describe the difference in scope differently. It seems to me that under the first reasonable fix, the location of the encrypted digital content file is unspecified. Under the second, the claim would require a digital content file that contains an encrypted digital content file. Because either possible fix is supported by the specification and there is no clear basis to choose between the two, the claim is indefinite. *See Novo Ind*., 350 F.3d at 1358.

4. "Decrypting encrypted product information contained in the encrypted digital content file and determining whether the user system complies with a license defined by license information contained in the dynamic license database, and when the user system complies with a license defined by license information contained in the dynamic license database…" (Claim 26)

    a. *Plaintiff's proposed construction*: The claim does not require a specific order of steps or different decrypting steps.

    b. *Defendant's proposed construction*: The steps must be performed in the order provided and the step of "decrypting encrypted product information" is different from the step of "decrypting the digital contents from the encrypted digital content file"

    c. *Court's construction*: The steps must be performed in the order provided.

Claim 26 reads:

---

[1] My memory is that at oral argument Plaintiff conceded the difference in scope of the two alternatives, but I do not have the transcript that would confirm that point.

7

> A method for accessing the digital content of a digital content file in a user system wherein the digital content file wherein the digital content includes data contained in an encrypted digital content file and the digital content file includes an embedded file access control mechanism including a decrypting mechanism, comprising the steps of:
> in the file access control mechanism,
> intercepting an attempt to access the digital content and validating licensed access of the digital content by,
> determining whether a dynamic license data associated with the file access control mechanism contains license information defining a license controlling user of the digital contents,
> when the dynamic license database contains information defining a license controlling use of the digital content,
> decrypting encrypted product information contained in the encrypted digital content file and determining whether the user system complies with a license defined by license information contained in the dynamic license database, and
> when the user system complies with a license defined by license information contained in the dynamic license database,
> decrypting the digital contents from the encrypted digital content file and providing the digital contents to the user system.

('567 patent).

The claim overall, including the phrase at issue, indicates that steps are performed in the order that they appear, and this is supported by the structure of the claim itself and the specification. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1309 (Fed. Cir. 2014) ("[I]f grammar, logic, the specification, or the prosecution history require the steps to be performed sequentially, then the claims are so limited."), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015); *Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1399 (Fed. Cir. 2014) (holding grammar and logic of the claim required establishing a connection before transmitting). Claim 26 begins with a preamble stating that it is a method claim. It then recites "intercepting an attempt to access" digital content. The claim next recites that if access is attempted, the system attempts to validate the access to see if the access is licensed. After determining whether there is a license to validate, the system then decrypts "encrypted product information" and determines whether the user system complies with

the license found in the database. Finally, if the user system complies with the license, the digital content is decrypted and provided to the user system. The steps are laid out in a logical order which strongly suggests that they be performed in that order. Indeed, Plaintiff does not argue that all of the steps can be performed in any random order. Plaintiff merely argues that the two "decrypting" steps need not be performed in the order in which they are described.

The language of the two "decrypting" steps refutes Plaintiff's argument. In the claim's description of the steps, the second "decrypting" step occurs "when the user system complies with a license defined by license information contained in the dynamic license database." ('567 patent, 47:26-28). But the first "decrypting" step "determin[es] whether the user system complies with a license defined by license information contained in the dynamic license database." (*Id*. at 47:22-25). The first "decrypting" step has to reach a "compliance" conclusion before the contents are decrypted.

5. "system fingerprint" (Claims 5, 6, 12, 28)

   a. *Plaintiff's proposed construction*: Plain and ordinary meaning (i.e., information identifying a system)

   b. *Defendant's proposed construction*: "A value that uniquely identifies a computer system"

   c. *Court's construction*: "The value that uniquely identifies a system"

Here, "fingerprint" has a general meaning and a specific technical meaning which the parties confirmed connotes a unique identifier. At the hearing, the parties agreed upon the term "value" as a way to describe the assignment of a unique identifier and agreed that the claim construction need not include "computer" as a descriptor for "system."

In claim 5, the relevant claim limitation is "system fingerprint information identifying a user system on which the digital contents are licensed for use." In claim 28, the relevant claim

9

limitation is "system fingerprint information identifying the user system in which the digital content is to be used." The specification refers to the "system fingerprint" as "a System ID," "System Identifier," and "SID." ('567 patent at 22:45-46, 23:33-34). Construing "system fingerprint" as "the value that uniquely identifies the system" is therefore consistent with how the term is used in the various claims and is also consistent with the specification.

## V.     CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.